**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.                                      17-MR-0119-RJA
                                               17-MJ-01086-JJM
                                            **DECISION AND ORDER**

LEVON DICKSON,

        Defendant.
_____

The Government moves, pursuant to 18 U.S.C. § 3145(a)(1), to revoke Magistrate Judge Jeremiah J. McCarthy's conditional order releasing the Defendant pending trial. After *de novo* review, and for the reasons stated below, the Government's motion is denied.

## BACKGROUND

The complaint alleges that, in June and July of this year, the Drug Enforcement Administration (DEA) made three controlled purchases of cocaine from the Defendant. *See* 17-mj-01086-JJM, Docket No. 1, ¶ 6. The cocaine from those purchases weighed, in total, approximately 2.5 ounces. *Id.* The complaint also alleges that, on August 3, 2017, agents "learned that [the Defendant] possessed one ounce of cocaine intended for distribution." *Id.* ¶ 8. After learning this information, agents stopped the Defendant in his car, arrested him, and recovered the cocaine. *Id.*

Following his arrest, and after being read his *Miranda* rights, the Defendant allegedly made several incriminating statements. Specifically, the complaint alleges the Defendant stated that: (1) he possessed "approximately six to seven ounces of cocaine" in his bedroom; (2) he possessed a digital scale, which was located beneath his bed; (3)

1

he had $4,000 in cash in his bedroom closet; (4) he "does not use cocaine and only sells it"; (5) he had sold "over 500 grams of cocaine in Erie County within the past month"; and (6) he has a regular supplier for the cocaine he distributes. *Id.* ¶ 9.

On the same day the Defendant was arrested, agents executed a search warrant for his house. In the Defendant's bedroom, agents found "several ounces of cocaine," a digital scale, and "an undetermined amount of US currency." *Id.* ¶ 10.

At the Defendant's initial appearance before Judge McCarthy on August 4, 2017, the Government moved for detention. After a detention hearing on August 7, Judge McCarthy denied the Government's motion and conditionally ordered the Defendant released on a number of conditions. Judge McCarthy ordered, among other conditions:

- That the Defendant reside with his mother;
- That the Defendant post a $50,000 bond secured by his mother's home and his aunt's home;
- That defense counsel confirm that the Defendant would be able to return to his job upon release (defense counsel confirmed this fact);
- That the Defendant be placed on electronic monitoring with home detention and that he be permitted to leave his residence for only a handful of reasons, such as work, court appearances, and religious services;
- That the Defendant not use alcohol, with zero tolerance for any alcohol use;
- That the Defendant surrender his passport and refrain from obtaining a passport or other travel documents;
- That the Defendant's travel be limited to the Western District of New York;
- That the Defendant not possess or use any narcotics or controlled substances;

- That the Defendant submit to testing as required by the Probation Office for purposes of detecting the presence and use of illicit substances; and
- That the Defendant participate in substance abuse therapy as directed by the Probation Office.

Judge McCarthy remanded the Defendant pending Pretrial Services' inspection of the Defendant's mother's home.

Pretrial Services inspected the Defendant's mother's home the next day. According to the Pretrial Services Officer, he asked the "the defendant's mother . . . if there were any weapons in the home," and "she advised there were not."[1] During the inspection, the Pretrial Services Officer found "in the basement, on a table . . . a tied off plastic sandwich bag containing 14 .45 caliber bullets. The defendant's mother stated she was not sure who they belonged to and denied there were any firearms in the residence." Judge McCarthy directed that the Defendant's mother's home be cleaned up and that Pretrial Services conduct another search.[2]

The Government then filed a motion with this Court to revoke Judge McCarthy's conditional release order.

## DISCUSSION

**1. The Bail Reform Act's standard for pretrial detention**

The Court reviews Judge McCarthy's conditional release order *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

---

[1] The Pretrial Services Officer provided this report to Judge McCarthy via email. That email was shared with counsel for both parties, and it was also provided to the Court after the Government filed its motion to revoke Judge McCarthy's conditional release order.

[2] At a status conference on August 23, 2017, the Pretrial Services Officer reported that a subsequent search of the Defendant's mother's home uncovered nothing of concern.

The Bail Reform Act "requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless [the court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). If a court determines that release on a recognizance bond would not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," § 3142(c), "the law still favors pre-trial release 'subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required.'" *Sabhnani*, 493 F.3d at 75 (quoting 18 U.S.C. § 3142(c)(1)(B)).

If, however, a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." 18 U.S.C. § 3142(f). The standard of proof by which a court must make detention findings depends on the basis for the Government's detention motion: If the Government seeks detention based on a defendant's danger, "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). In other words, "the evidence must support a conclusion of danger to the community 'with a high degree of certainty.'" *United States v. Enix*, 209 F. Supp. 3d 557, 563 (W.D.N.Y. 2016) (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)). If, on the other hand, the Government seeks detention based

on a defendant's flight risk, the Government must first prove by a preponderance of the evidence that "the defendant presents a risk of flight." *Sabhnani*, 493 F.3d at 68 n.5. If the Government does so, it must then prove by a preponderance of the evidence that "there are [no] conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

When a defendant is charged with committing a serious narcotics offense (among other crimes), the Bail Reform Act imposes "a presumption . . . that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). This is a presumption case because the Defendant is charged with a Controlled Substances Act violation for which the maximum penalty is ten years or more. 18 U.S.C. § 3142(e)(3)(A).

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* Thus, "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.*

To determine whether the Defendant has rebutted the presumptions of dangerousness and flight, the Court considers the four factors listed in 18 U.S.C.

5

§ 3142(g): (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the Defendant's release would present. *See Mercedes*, 254 F.3d at 436.

**2. Application to the facts of this case**

**A. The nature and circumstances of the crime charged**

The nature of the crime with which the Defendant is charged is, of course, serious. The Defendant is charged with possessing with the intent to distribute, and distributing, cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). If convicted of this charge, the Defendant faces a maximum penalty of 20 years' imprisonment. 21 U.S.C. § 841(b)(1)(C). But because of his prior felony narcotics convictions, the Defendant may face a maximum penalty of 30 years' imprisonment. *Id.* And given the weight of cocaine the Defendant allegedly admitted to distributing, as well as his prior felony narcotics convictions, the Defendant could face a mandatory minimum penalty of 10 years' imprisonment and a maximum penalty of life imprisonment. 21 U.S.C. § 841(b)(1)(B).

The circumstances of the offense are also serious. To be sure, the complaint does not allege, and the Government has not proffered, that the Defendant employed violence as part of this case. But the Defendant is still alleged to have sold a significant quantity of cocaine to a number of individuals in a short period of time. That is a serious offense.

These facts strengthen the statutory presumption that no condition or combination of conditions can reasonably ensure the safety of the community. Moreover, given the severe penalties the Defendant faces if he is convicted, the crime charged also

strengthens the presumption that no condition or combination of conditions can reasonably ensure the Defendant's presence as required. The Defendant has not brought forth evidence rebutting this factor.

**B. The weight of the evidence against the Defendant**

The Government proffers, and the Defendant does not appear to dispute, that the weight of the evidence against him is strong. The Defendant allegedly sold cocaine to three customers who were cooperating with the DEA; a search warrant executed at the Defendant's home uncovered additional cocaine, a scale, and cash, all located in his bedroom; and the Defendant allegedly made a number of incriminating statements following his arrest.

In considering the strength of the evidence against the Defendant, the Court is mindful that its "function . . . is not to determine guilt or innocence." *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008). Instead, its purpose is only to assess "'the likelihood that the person will fail to appear or will pose a danger to any person or to the community.'" *Id.* (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). Judged by that standard, the strength of the evidence supports the presumptions that apply in this case.

**C. The Defendant's history and characteristics**

The Defendant is 43 years old and has lived in Buffalo for nearly his entire life. He has maintained the same job (with gaps for prior periods of incarceration) as a maintenance worker at an apartment building for the past 19 years. The Defendant reported that he has been engaged for the past six years. He also reported living with his fiancé and her son, in Buffalo, "on and off" for the past six years. Prior to that, the

Defendant appears to have lived with his mother for most of his life. Finally, the Defendant has three children from prior relationships (two of whom live in Buffalo), and he reported "maintain[ing] regular contact" with each child. The Defendant therefore appears to have very strong ties to Buffalo. This evidence weakens his incentive to flee.

The Defendant's criminal history, however, is troubling. Since 1993, the Defendant has been convicted of a number of narcotics- and firearms-related misdemeanors, one of which (a 1996 conviction) involved two people being shot. (The Defendant pled guilty to assault in the third degree, a Class A misdemeanor; he denied shooting either victim and was sentenced to three years' probation.) The Defendant also has two prior felony narcotics convictions, from 1998 and 2004. And in 2009, this Court sentenced the Defendant to 37 months' imprisonment after he pled guilty to possessing a firearm as a felon. Finally, in 2015, the Defendant pled guilty to aggravated driving while intoxicated, a misdemeanor. Collectively, these prior convictions "strengthen[] the presumption that no condition or conditions imposed by this Court are likely to ensure the safety of the community." *United States v. Williams*, 2017 WL 104643, at *4 (W.D.N.Y. Jan. 11, 2017).

The Court also considers the Defendant's history of court-ordered supervision. The Defendant appears to have violated prior terms of probation or pretrial release five times (twice in 1996, once in 1997, once in 1998, and once in 1999), and, in addition, a bench warrant was issued for him in 2002. This lengthy history of non-compliance with court-ordered supervision would, in the ordinary case, erect a nearly-insurmountable barrier to release. But each violation is somewhat dated. And, more importantly, the Defendant's recent record provides evidence rebutting the statutory presumption of danger. The Defendant has spent a substantial part of the last twelve years on

supervision: He was on New York State parole from 2005 until 2009, and he was under the supervision of this Court from 2011 until 2014. The Defendant served both terms of supervision without incident.

**D. The nature and seriousness of the danger if the Defendant were released**

If the Defendant were released, given his prior record and the allegations in this case, the primary risk of danger would be "the harm to society caused by narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). The danger from such activity requires no explanation.

The Defendant's documented struggle with alcohol also poses a risk of danger to the community if he were released. Of course, alcoholism does not necessarily mean that a person's release poses a danger. But the Defendant's issues with alcohol have resulted in two convictions for driving while intoxicated or impaired by alcohol. His most recent such conviction, in March 2015, was for "aggravated DWI," a charge that requires a blood-alcohol content of at least 0.18%. *See* N.Y. V.T.L. § 1192(2-a)(a). The Defendant also reported to the Pretrial Services Officer that he drinks alcohol "on the weekends," and that he typically has "a couple shots of liquor" when he drinks. To his credit, the Defendant has attended treatment for alcohol and drug dependence on at least two occasions, but he nonetheless reported to the Pretrial Services Officer that he most recently drank alcohol the weekend before his arrest in this case. The Defendant's struggle with alcohol, and the danger that struggle poses to the community, is serious.

\* \* \*

After carefully considering the facts proffered by the Government, the evidence brought forward by the Defendant, the factors set forth in 18 U.S.C. § 3142(g), and the

9

statutory presumptions in this case, *id.* § 3142(e), the Court, upon *de novo* review, affirms Judge McCarthy's conditional release order.

The stiff penalties the Defendant faces (and may still face), as well as the apparent strength of the Government's case, buttress the statutory presumption that no condition or combination of conditions could reasonably ensure his presence at trial. But the Defendant has introduced evidence that rebuts the presumption: He has strong ties to the community (indeed, it appears that he has no meaningful ties to any place but Buffalo), and Judge McCarthy's strict conditions of release, upon *de novo* review, are sufficient to reasonably ensure the Defendant's presence as required.

Whether the Defendant has brought forth evidence rebutting the presumption that no condition or combination of conditions can reasonably ensure the safety of the community and others is a much closer question. The conduct with which the Defendant is charged poses an obvious danger to the community. And the Defendant's lengthy criminal history shows that he has repeatedly committed crimes that pose the same, or an even greater, danger. As is especially pertinent here, that history includes five violations of probation or pretrial release.

What tips the balance in favor of release, however, is the Defendant's most recent periods of supervision. The Defendant was on supervised release in this Court from November 2011 until November 2014, during which he did not violate the terms of his supervision. And prior to his supervision in this Court, the Defendant was on New York State parole from 2005 until 2009. As with his time on supervised release in this Court, the Defendant sustained no violation while on parole. Thus, despite an unquestionably-troubling criminal record, the Defendant has spent seven of the last twelve years under

10

some form of supervision, all without incident. The Court's primary concern in this case is whether conditions of release will be enough to prevent the Defendant from engaging in further criminal conduct while on release. The Defendant's recent history of supervision provides strong evidence that conditions of release will be enough to do so.

Moreover, the strict conditions of release imposed by Judge McCarthy are sufficient to reasonably ensure the safety of the community. The Court, of course, must review Judge McCarthy's conditional release order *de novo*. But the conditions Judge McCarthy imposed are, collectively, sufficient to reasonably ensure the Court that the Defendant will not pose a danger to others or to the community while on release. Among other things, the Defendant will be under house arrest in his mother's home for the duration of his pretrial release; he will be subject to a zero-tolerance policy for any alcohol use; and, most significantly, the Defendant's mother and aunt both stand to lose their homes if the Defendant violates the terms of his release. The Defendant appears to have lived with his mother for a substantial part of his life. Knowing that his misconduct could cause her to lose her home is a substantial incentive to follow the conditions of his pretrial release.

## CONCLUSION

This is a very close case.[3] But after *de novo* review, the Court concludes that the Government has failed to carry its burden of showing that no condition or combination of conditions can reasonably ensure the Defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(f). The Government's motion to revoke Judge McCarthy's conditional release order is therefore denied.

---

[3] Detention decisions are often heavily dependent on the unique facts of each case. Thus, this Decision and Order is not intended to be, and should not be regarded as, any form of precedent.

The Court imposes the same conditions of release imposed by Judge McCarthy, with one exception. Judge McCarthy ordered a $50,000 bond to be secured by 64 Halbert Street and 76 Halbert Street. At a status conference on August 23, 2017, defense counsel reported that the Defendant's mother's home is partially encumbered by a home equity loan and that the total, unencumbered value of 64 Halbert Street and 76 Halbert Street is $45,174.13. The Court therefore lowers the bond amount from $50,000 to $45,174.13. The Court imposes all other conditions of release imposed by Judge McCarthy. Those conditions are as follows:

- That the Defendant live with his mother at 64 Halbert St., Buffalo, New York;
- That the Defendant maintain his present employment;
- That the Defendant be placed on electronic monitoring with home detention that permits him to leave his mother's residence only for employment; court appearances; education; religious services; medical appointments; substance abuse and mental health treatment; attorney meetings; and other court-ordered obligations, all to be pre-approved by the U.S. Probation Office;
- That the Defendant refrain from the use of alcohol, with zero tolerance for the use of any alcohol;
- That the Defendant report to the Pretrial Services Office within 24 hours of his release from custody;

- That the Defendant surrender his U.S. Passport to the Clerk of Court, and that he refrain from obtaining a passport or other travel document while on pre-trial release;

- That the Defendant not travel outside the Western District of New York;

- That the Defendant not possess any firearm, dangerous weapon, or destructive device;

- That the Defendant not use or unlawfully possess any narcotics or controlled substances;

- That the Defendant submit to testing as required by the U.S. Probation Office for purposes of detecting the presence or use of any illicit substances;

- That the Defendant participate in inpatient and out-patient substance abuse therapy as directed by the U.S. Probation Office;

- That the Defendant not tamper with or obstruct any drug testing or electronic monitoring device; and

- That the Defendant report any law enforcement contact to the U.S. Probation Office within 72 hours of such contact.

The parties shall appear at 11:30 a.m. on August 28, 2017 to execute a surety bond. The sureties should be in attendance with photo identification and proof of ownership for the properties used to secure the bond.

**SO ORDERED.**

Dated: August 25, 2017                            __s/Richard J. Arcara__
   Buffalo, New York                          HONORABLE RICHARD J. ARCARA
                                                        UNITED STATES DISTRICT JUDGE